FILED31 OCT '11 10:11USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KELLY SHEPARD,

Plaintiff,

v.

THE CITY OF PORTLAND, a
municipal corporation,
SUZANNE KAHN and RANDY
JOHNSON,

Defendants.

Civil No. 09-0021-AA
OPINION AND ORDER

_____

Daniel Snyder
Carl Post
Erin McCool
Law offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
    Attorneys for plaintiff

Page 1 - OPINION AND ORDER

Kari A. Furnanz
Kelly S. Riggs
Hoffman Hart & Wagner, LLP
1000 S.W. Broadway, Suite 2000
Portland, Oregon 97205
    Attorneys for defendant

AIKEN, Chief Judge:

    Defendants the City of Portland, Suzanne Kahn, and Randy
Johnson each move for summary judgment on plaintiff Kelly
Shepard's employment discrimination and retaliation claims. See
Fed. R. Civ. P. 56. For the reasons set forth below, Suzanne
Kahn's and Randy Johnson's motions are granted; the City of
Portland's motion is granted in part and denied in part.

## BACKGROUND

    Defendant the City of Portland (the "City") is a municipal
corporation organized pursuant to state law. Defendants Suzanne
Kahn ("Kahn") and Randy Johnson ("Johnson), as well as plaintiff,
work for the City. Plaintiff was first hired in 1981. In May
2000, after years of continuous promotions, plaintiff was
appointed to Senior Public Works Supervisor ("Senior Supervisor")
of the Portland Bureau of Transportation.

    As Senior Supervisor, plaintiff reported to the
Environmental Systems Division Manager ("Division Manager"). The
Division Manager reported to the Maintenance Group Manager
("Group Manager"). At the time of plaintiff's promotion in 2000,
Fred Burkhardt ("Burkhardt") was the Division Manager and Sam
Irving ("Irving") was the Group Manager.

    In the fall of 2003, plaintiff began to have disagreements
and negative experiences with a number of his co-workers and
Page 2 - OPINION AND ORDER

supervisors, starting with incident in which a subordinate employee whom plaintiff was investigating for misconduct filed a harassment claim against him. In another instance, plaintiff made comment at during a discussion of the City's diversity survey that some employees viewed as racist.

In February 2005, plaintiff started experiencing serious memory loss and was ultimately diagnosed with generalized anxiety disorder.

In July 2005, Mark Mitchell ("Mitchell") was appointed as the new Division Manager when Burkhardt retired. Soon thereafter, Mitchell communicated to plaintiff that Irving identified plaintiff as a problem employee. In August of either 2005 or 2006[1], plaintiff offered an injured employee the opportunity to go on a ride-a-long to see if that employee felt comfortable with the job he was being offered. The Human Resources Coordinator told plaintiff that he "messed up," and later reported the incident to Kahn. Irving later told plaintiff that Kahn had recommended discipline and laughed while saying, "[y]ou don't get it. We discipline you, we discharge you."

In the spring of 2006, plaintiff took medical leave for surgery. In November 2006, Mitchell accepted another job and recommended that plaintiff be given the temporary appointment as

---

[1]Plaintiff's statements regarding this event are inconsistent. In his declaration, plaintiff states that he was threatened with termination by Irving in 2006, immediately after he returned from FMLA leave. See Plf.'s Decl., ¶ 48. Yet in response to defendant's interrogatory, plaintiff declared that this event took place instead in 2005. See Furnanz Decl., Ex. 2, Response to Interrogatory No. 10, pg. 21.

Page 3 - OPINION AND ORDER

Division Manager until the position could be permanently filled. Mitchell told plaintiff that Irving was angry at the suggestion and that Irving seemed to have some "deep seated issues with plaintiff of a very personal nature." On November 28, 2006, Irving informed plaintiff that Michael Boyle ("Boyle") was going to be temporarily promoted to Division Manager. Irving explained that one of the reasons that plaintiff was not being promoted was because he had missed too much work. Boyle had no previous experience with respect to sewer collection systems.

In late 2006 or early 2007, Irving and Boyle required plaintiff to set a formal "start time" for work. Boyle instructed plaintiff to arrive no later than 6:30 a.m. so that he would be present when the first shift started, which is approximately half an hour earlier than plaintiff's regular start time, and to leave eight-hours later. Plaintiff had never previously been required to have a formal start time.

In a management meeting sometime prior to February 2007, plaintiff reported his concern that the Bureau was improperly overpaying premium pay to employees for non-premium work.

On February 16, 2007, plaintiff experienced severe anxiety. On February 20, 2007, plaintiff's physician removed him from work due to a "mental breakdown." When plaintiff informed Boyle that he was taking medical leave, Boyle requested that plaintiff provide the password to his computer. On February 21, 2007, plaintiff filed a workers' compensation claim for his psychological condition. Also on February 21, 2007, plaintiff

Page 4 - OPINION AND ORDER

reported "racial, whistleblowing, and medical leave
discrimination and harassment" to Kahn and Transportation
Director Sue Keil ("Keil"). In April 2007, plaintiff also made a
harassment claim against Boyle. Plaintiff was on medical leave
for approximately three months.

In April 2007, Johnson was appointed as permanent Division
Manager. On April 23, 2007, the City denied the compensability
of plaintiff's worker compensation claim. While plaintiff was on
leave, the City used plaintiff's password to search his computer.
In addition, some of plaintiff's personal belongings had been
removed from his desk and shelf, and piled instead on a cabinet
and windowsill. Plaintiff reported this incident to Johnson,
stating that it was "retaliation" for filing a workers'
compensation claim.

On May 11, 2007, plaintiff returned from leave. Plaintiff's
doctor recommended that he be allowed to return to work part-
time. Johnson indicated that he was unsure if Kahn would find
that transition acceptable, stating that Kahn preferred that
plaintiff return to work full-time. Ultimately, plaintiff was
permitted to return to work on a part-time basis.

In August 2007, Tony Bottger ("Bottger") informed plaintiff
that Johnson made derogatory comments about plaintiff to several
managers and supervisors in a meeting that Bottger attended.

In October 2007, plaintiff received a performance evaluation
from Johnson that was approved by Kahn. The performance
evaluation rated plaintiff's overall performance as "effective."

Page 5 - OPINION AND ORDER

On November 13, 2007, plaintiff sent a letter to Johnson, stating that he was dissatisfied with the evaluation because it was "negative in tone" and "contained false accusations." In response to plaintiff's letter, Johnson and Kahn improved plaintiff's evaluation.

During January 2008, plaintiff had hearings on his workers' compensation claim. On June 14, 2008, an Administrative Law Judge reversed the City's denial of plaintiff's workers' compensation claim.

During the spring and summer of 2008, plaintiff continued to have disagreements and negative experiences in the workplace, especially with Kahn and Johnson. Most of these instances involved Kahn or Johnson correcting disciplinary actions that plaintiff had taken in regard to the employees plaintiff supervised. Pursuant to one of these inter-workplace conflicts, an employee filed a complaint against plaintiff for bullying. The City hired an outside agent to investigate these allegations.

On December 26, 2008, Johnson informed plaintiff that the complaint against him could not be substantiated, but the investigation revealed that plaintiff was too direct in his management style. As a result, plaintiff was required to meet with a management consultant. On December 28, 2008, Johnson issued plaintiff an oral warning for work rule violations. Sometime in 2009, the City hired an additional Senior Supervisor, K.W. K.W. was responsible for supervising approximately half of plaintiff's employees.

Page 6 - OPINION AND ORDER

From October 27, 2009 to November 30, 2009, plaintiff took medical leave for a knee surgery. On December 4, 2009, Johnson issued plaintiff a "Written Reprimand" for events that occurred while he was out on leave. In January 2010, Johnson began requiring plaintiff to compose a weekly report of his daily activities. No other employee was required to create a weekly report. Plaintiff never complied with this requirement and Johnson ultimately waived it.

On June 22, 2010, Dawn Jansen ("Jansen"), the Human Resources Site Team Manager, contacted plaintiff and inquired whether he needed any accommodations for his disability. At that time, plaintiff did not request any accommodations. On June 23, 2010, Jansen again contacted plaintiff and asked that he fill out a formal "Job Accommodation Request Form." On July 2, 2010, plaintiff submitted his "Job Accommodation Request Form," in which he alleged limitations due to memory loss and insomnia. In regard to accommodations, plaintiff requested: reminders for meetings, assistance in keeping task lists current, and not to be "reprimanded for being late for work due to lack of sleep." This was the first time that plaintiff made a formal claim of disability or requested accommodations.

Jansen and plaintiff remained in contact over the next few months regarding accommodations. On September 23, 2010, Jansen and plaintiff met to discuss plaintiff's limitations associated with his memory loss and anxiety. On September 27, 2010, Jansen proposed a list of tasks to help accommodate plaintiff's

Page 7 - OPINION AND ORDER

disability, including creating and printing out a calendar that detailed each days events.  Plaintiff rejected this plan and asked to "start over again on the interactive process."  As of June 3, 2011, no additional accommodations have been discussed.

Between October 8, 2007 and August 27, 2008, plaintiff filed three BOLI complaints, asserting claims for violations of the Oregon Family Leave Act ("OFLA"), injured worker discrimination, and whistleblower retaliation.  In each instance, BOLI issued a "right to sue" letter.

Between July 5, 2007 and December 15, 2009, plaintiff sent several torts claims notices to the City, communicating his intent to assert claims for violations of the OFLA, workers' compensation discrimination, retaliation for filing an employment discrimination charge, and whistleblowing retaliation against the City, Kahn, Johnson, and Boyle.

On January 6, 2009, plaintiff filed his original complaint in this Court on the basis of federal question jurisdiction.  On February 8, 2010, plaintiff filed his second amended complaint, alleging claims for: 1) discrimination and retaliation for taking leave under the Family Medical Leave Act ("FMLA"); 2) discrimination and retaliation for taking leave under the OFLA; 3) injured worker discrimination; 4) disability discrimination and retaliation; 5) whistleblower retaliation; and 6) violation of civil rights pursuant to 42 U.S.C. § 1983.  Defendants move for summary judgment on all of plaintiff's claims.

## STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determined the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

**DISCUSSION**

The central issue to be decided in this case is whether any of plaintiff's federal and state employment-related rights have been violated by the treatment he received in his tenure at the City. As an initial matter, the parties dispute whether the McDonnell Douglas[2] burden-shifting framework applies to plaintiff's employment discrimination and retaliation claims.

The City moves for summary judgment on plaintiff's employment discrimination and retaliation claims under three theories. First, the City asserts that portions of plaintiff's claims are time-barred by either the applicable statute of limitations or the notice provision of the Oregon Torts Claims Act ("OTCA"). Second, the City contends that, to the extent that plaintiff's claims are not time-barred, they fail as a matter of law because plaintiff cannot state a prima facie case as he has sustained no adverse employment action. Third, the City argues that summary judgment is appropriate on the merits, even if there was an adverse employment action, because there is no causal connection between plaintiff's statutorily protected actions and the adverse employment action.

Finally, in regard to plaintiff's 42 U.S.C. § 1983 claim, the City asserts that it is entitled to summary judgment because plaintiff cannot articulate a prima facie case or prove that defendant had a policy or custom of violating First Amendment rights. To the extent that they are applicable, Kahn and Johnson

---

[2]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

incorporate the City's arguments in favor of summary judgment.

Plaintiff concedes that summary judgment is appropriate on his disability retaliation claim against the City, pursuant to Or. Rev. Stat. § 659A.109; his whistleblowing claim against Kahn and Johnson, pursuant to Or. Rev. Stat. § 659A.203; and his punitive damages claim against the City, pursuant to 42 U.S.C. § 1983.

Plaintiff argues, however, that summary judgment is inappropriate on the remainder of his claims because he has adequately established his prima facie case. Specifically, in regard to his FMLA and OFLA claims, plaintiff contends that he has direct evidence of retaliatory intent; in regard to his state retaliation and discrimination claims, plaintiff asserts that there is a reasonable inference of causation based on temporal proximity. In addition, plaintiff argues that he has sufficiently alleged a prima facie case and introduced material issues of fact such as to preclude summary judgment on his 42 U.S.C. § 1983 claim.

## I. Preliminary Matters

Two preliminary matters must be addressed before proceeding to the merits of defendants' motions. First, the City makes an evidentiary objection, pursuant to LR 56-1, regarding plaintiff's declaration in support of his opposition to summary judgment. See City's Reply to Mot. Summ. J. 7-8. Second, there is a question of law regarding whether the McDonnell Douglas framework is applicable to plaintiff's state law claims.

Page 11 - OPINION AND ORDER

## A.   Evidentiary Objection

The City contends that a number of the statements made in plaintiff's declaration are inadmissible because they are either not relevant, hearsay, or improperly self-serving and contradictory.  Accordingly, "the City requests that the court rely on [plaintiff's] sworn deposition testimony rather than inadmissible statements in his declaration."  Id. at 8. Plaintiff did not file a sur-reply opposing the City's evidentiary objection.  See LR 56-1(b).

Plaintiff's declaration is an expansive document, totaling 42 pages and 140 paragraphs.  See generally Plf.'s Decl.  While the City proffers broad rationales for discrediting plaintiff's statements, it fails identify specifically those portions of the declaration that are inadmissible and why.  As such, the Court is not now going to undertake the arduous task of sorting through, identifying, and discounting such statements.  However, to the extent that any statements contained therein are inadmissible, they will be disregarded.

## B.   Application of the McDonnell Douglas Analysis

Since the disposition of this issue greatly impacts the analysis of the City's motion, the Court must determine, prior to addressing the parties substantive claims, whether the McDonnell Douglas burden-shifting framework applies to plaintiff's employment discrimination and retaliation claims.  It is undisputed, however, that McDonnell Douglas does not affect plaintiff's section 1983 claim.

Page 12 - OPINION AND ORDER

The City asserts that this three-part framework applies to
all of plaintiff's employment-related claims. See City's Memo.
in Support of Mot. Summ. J. 18, 25 (citing Price v. Multnomah
Cnty., 132 F.Supp.2d 1290 (D.Or. 2001) and Snead v. Metropolitan
Prop. & Cas. Ins. Co., 237 F.3d 1080 (9th Cir. 2001)). Under the
McDonnell Douglas analysis, if plaintiff proves a prima facie
case, the burden of production shifts to the defendant to
articulate a legitimate, non-discriminatory reason for the
adverse employment decision. Davis v. Team Elec. Co., 520 F.3d
1080, 1089 (9th Cir. 2008). If the defendant articulates a
legitimate reason, the burden shifts back to plaintiff to
demonstrate that defendant's proffered reason was pretext for a
discriminatory or retaliatory motive. Id.

Plaintiff argues the converse, contending that the McDonnell
Douglas burden-shifting analysis does not apply at all in this
case for two reasons. First, defendant asserts that the FMLA is
a strict liability statute and, as such, the City's motives are
irrelevant. See Plf.'s Resp. to Mots. Summ. J. 18 (citing
Underhill v. Willamina Lumber Co., 1999 WL 421596, *5 (D.Or. May
20, 1999)). Second, in regard to the remaining employment-
related claims brought under state law, plaintiff asserts that a
prima facie case is all that is required to survive summary
judgment. Id. at 21-22, 25, 29.

I. Summary Judgment Standard for FMLA and OFLA Claims

Plaintiff alleges violations of both the FMLA and the OFLA.
The OFLA is "construed to the extent possible in a manner that is

Page 13 - OPINION AND ORDER

consistent with any similar provisions of [the FMLA]." Or. Rev. Stat. § 659A.186(2). Thus, if the McDonnell Douglas analysis applies to plaintiff's FMLA claim, it will also apply to his OFLA claim.

The FMLA provides a cause of action for two general types of claims. First, it is unlawful for a covered employer "to interfere with, restrain or deny the exercise of ... any right" provided under the FMLA. 29 U.S.C. § 2615(a)(1) ("interference claim"). Second, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2) ("retaliation claim").

A retaliation claim under Section 2615(a)(2) requires proof that the employer took some discriminatory action against an employee who opposed a practice made unlawful by the FMLA. Bachelder v. Am. West Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001). This provision "[does] not cover visiting negative consequences on an employee simply because he has used FMLA leave"; in such circumstances, the employee's only remedy is an interference claim under Section 2615(a)(1). Id.; see also Traxler v. Multnomah Cnty., 2008 WL 282272, *16 (D.Or Jan. 29, 2008).

Whether the McDonnell Douglas framework applies is determined by the type of FMLA claim asserted. See Price, 132 F.Supp.2d at 1296-97. Where an interference claim is alleged pursuant to Section 2615(a)(1), a "plaintiff must show by a

Page 14 - OPINION AND ORDER

preponderance of the evidence that his use of FMLA-protected leave was a negative factor in defendant's [adverse employment] decision" in order to avoid summary judgment. Mink v. Marion Cnty. Juvenile Dept., 2009 WL 5173513, *6 (D.Or. Dec. 18, 2009) (citing Phillips v. PacifiCorp, 304 Fed.Appx. 527, 531 (9th Cir. 2008)). Conversely, where a plaintiff alleges a prima facie case for retaliation or discrimination pursuant to Section 2615(a)(2), the McDonnell Douglas burden-shifting framework is implicated. Price, 132 F.Supp.2d at 1296-97.

Here, plaintiff is not explicit regarding which provision of the FMLA his complaint is brought under. See Sec. Am. Compl. ("SAC") ¶¶ 47-49. Plaintiff alleges that the City "willfully discriminated against [him], interfered with [his] efforts to take leave, deterred [him] from exercising his rights, and retaliated against [him] in retaliation for asserting his right under the FMLA." Id. While plaintiff phrases his claim as one of retaliation and discrimination, his essential allegation is that he suffered adverse employment actions for taking FMLA leave. Id. At no point does plaintiff assert that he opposed any practice made unlawful by the FMLA, as would be required for a retaliation claim under Section 2615(a)(2). Id. Further, the record indicates that the City always granted plaintiff's requests for leave and, as such, did not impede or restrict plaintiff's efforts to exercise his rights under the FMLA. As such, this Court construes plaintiff's claim as one of interference pursuant to Section 2615(a)(1). Bachelder, 259 F.3d

Page 15 - OPINION AND ORDER

at 1124. Therefore, the McDonnell Douglas analysis is not
applicable to plaintiff's FMLA or OFLA claims.

>    ii. Summary Judgment Standard for Remaining Employment
>        Discrimination and Retaliation Claims

The City asserts that the McDonnell Douglas burden-shifting
framework constitutes federal procedural law and, thus, applies
to all employment retaliation and discrimination cases that are
brought under state law. See Snead, 237 F.3d at 1092-93.
Plaintiff contends that summary judgment should be denied on any
Oregon retaliation or discrimination claim, even if the defendant
offers evidence of a non-discriminatory motive, once plaintiff
has established a prima facie case. See Williams v.
Freightliner, LLC, 196 Or. App. 83, 89, 100 P.3d 1117 (2004)
(declining to apply McDonnell Douglas framework to a claim
brought under Or. Rev. Stat. § 659A.040); Ryan v. Patterson
Dental Supply, Inc., 2000 WL 640859, *37 (D.Or. May 12, 2000)
(Oregon whistleblowing claim should have survived summary
judgment upon Magistrate Judge's finding that plaintiff presented
a prima facie case).

As plaintiff indicates, Oregon courts have expressly
rejected the burden-shifting framework. See Pascoe v. Mentor
Graphics Corp., 199 F.Supp.2d 1034, 1052 & n.4 (D.Or 2001)
(citing Callan v. Confederation of Or. Sch. Admin'rs, 79 Or. App.
73, 77, 717 P.2d 1252 (1986)). Moreover, Snead is
distinguishable in that its holding was limited to cases in which
the court was sitting in diversity. Snead, 237 F.3d at 1092-93;

Page 16 - OPINION AND ORDER

see also Pascoe, 199 F.Supp.2d at 1052 & n.4 ("[Snead] arguably does not apply when the court has federal question jurisdiction over [a federal] claim and simply supplemental jurisdiction over a state claim"). Because courts within this district have not spoken with one voice regarding the circumstances under which McDonnell Douglas applies, it remains uncertain whether to employ the burden-shifting framework wherein the court has supplemental, as opposed to diversity, jurisdiction. Compare Whitley v. City of Portland, 654 F.Supp.2d 1194, 1212-13 (D.Or. 2009) (declining to apply the McDonnell Douglas burden-shifting analysis to discrimination claim brought under state law), with Isom v. Legacy Good Samaritan Hosp. & Med. Ctr., 2009 WL 2601992, *5-6 (D.Or. Aug. 20, 2009) (construing Snead as binding, even on supplemental state law claims, and applying the McDonnell Douglas burden-shifting analysis).

Despite the turmoil within this district, the Ninth Circuit has held that McDonnell Douglas applies, regardless of the basis of the court's jurisdiction: "Snead represents the law of this circuit and applies in all cases in federal district court in which the choice between federal and state procedural law is presented. The answer to the question whether federal procedural law must be applied is the same regardless of the source of the federal court's subject matter jurisdiction over a claim." Dawson v. Entek Intern., 630 F.3d 928, 935 (9th Cir. 2011) (citing In re Exxon Valdez, 484 F.3d 1098, 1100 (9th Cir. 2007) ("'Erie principles apply equally in the context of pendent

Page 17 - OPINION AND ORDER

jurisdiction.' ... the basis of a federal court's jurisdiction
over a state law claim is irrelevant for Erie purposes")
(internal quotations omitted)).

Further, Oregon's employment discrimination and retaliation
statutes are generally construed consistently with federal law,
wherein McDonnell Douglas undoubtedly applies. See Or. Rev.
Stat. § 659A.139 (claims brought under Oregon law are "construed
to the extent possible in a manner that is consistent with . . .
similar provisions of the [ADA]"); Or. Rev. Stat. § 659A.186(2)
(claims brought under Oregon law are "construed to the extent
possible in a manner that is consistent with any similar
provisions of [the FMLA]"); Hess v. Multnomah Cnty., 216
F.Supp.2d 1140, 1152 (D.Or. 2001) ("[b]ecause ORS Chapter 659[A]
'was modeled after Title VII . . . federal cases interpreting
Title VII are instructive,'" quoting Harris v. Pameco Corp., 170
Or. App. 164, 176, 12 P.3d 524 (2000)). Thus, because Snead
governs and because the state and federal statutes are read
congruously, I find that the burden-shifting framework applies to
all of plaintiff's employment discrimination and retaliation
claims brought under Oregon law. Dawson, 630 F.3d at 935 ("Snead
directly controls this case, and dictates that the
burden-shifting framework applies to all . . . federal and state
discrimination claims").

II. Application of the Relevant Statutes of Limitations and the
    Oregon Torts Claims Act Notice Provision

Defendants contend that portions of plaintiff's claims are
prohibited by the relevant statutes of limitations or OTCA. As
such, defendants assert that they are entitled to partial summary
judgment in regard to plaintiff's claims that are time-barred.
Plaintiff contests the application of the statutes of limitations
and the OTCA, arguing that these provisions do not bar any
portion of his claims since the alleged harm was continuous.

A. Continuing Harm

Plaintiff asserts that the limitations period runs from the
last discrete overt act that is related to the alleged a
continuing violation of law, and cites to two cases in support of
this assertion. See LaSalvia v. United Dairymen of Ariz., 804
F.2d 1113, 1119 (9th Cir. 1986), cert. den., 482 U.S. 928 (1987);
Eichman v. Fotomat Corp., 880 F.2d 149, 160 (9th Cir. 1989). In
the alternative, plaintiff alleges that defendants "engaged in a
continuous campaign to discredit and undermine [plaintiff's]
credibility with subordinates," thereby creating a hostile work
environment. Plf.'s Resp. to Mots. Summ. J. 19. Plaintiff
neglected, however, to brief or plead a hostile work environment
claim. Regardless, where a hostile work environment exists,
events occurring outside of the limitations period are
actionable. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101,
114 (2002).

The City contends that plaintiff cannot establish an

Page 19 - OPINION AND ORDER

exception to the statute of limitations or OTCA notice requirements under the doctrine of continuing harm because plaintiff's allegations are based solely on discrete discriminatory acts.

i. Legal Standards

The continuing violations doctrine permits a court to consider events that would otherwise be time-barred if the untimely incidents are part of an on going unlawful employment practice. Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1107 (9th Cir. 1998). In Oregon, "the continuing tort theory is similar to the continuing violation theory" under federal law. Reyna v. City of Portland, 2005 WL 708344, *5 (D.Or. March 28, 2005). Thus, to establish a continuing violation under both state and federal law, a plaintiff must show that the untimely incidents were part of an ongoing pattern of discrimination, which continued into the applicable limitations period. Sosa v. Hiraoka, 920 F.2d 1451, 1455 (9th Cir. 1990).

The Supreme Court, however, has limited the application of the continuing harm doctrine. Morgan, 536 U.S. at 114; see also Reyna, 2005 WL 708344 at *3 ("[t]he utility of the "continuing violation" doctrine, as applied by the Ninth Circuit in federal employment discrimination cases, was severely eroded by . . . Morgan"). In Morgan, the Supreme Court invalidated the "related acts" method of establishing a continuing violation. Morgan, 536 U.S. at 113. The Court explained:

discrete discriminatory acts are not actionable if time

Page 20 - OPINION AND ORDER

barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the [requisite] period after the discrete discriminatory act occurred.

Id. Thus, the continuing harm doctrine is inapplicable where discrete discriminatory acts, such as "termination, failure to promote, denial of transfer, or refusal to hire," serve as the basis of the claim. Id.

Hostile work environment claims, however, "are different in kind from discrete acts. Their very nature involves repeated conduct" and, as such, "cannot be said to occur on any particular day." Id. at 115 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). Accordingly, where untimely incidents are part of an ongoing hostile work environment that extends into the limitations period, the continuing harm doctrine applies. Id. at 117-18.

Therefore, the cases plaintiff relies on, which support the "related acts" method of establishing a continuing violation based on discrete acts, are no longer good law to the extent that they are inconsistent with Morgan. More importantly, the cases that plaintiff cites to are anti-trust, not employment, cases. See LaSalvia, 804 F.2d at 1119 (applying the continuing harm doctrine to anti-competitive conduct); Eichman, 880 F.2d at 160 ("[u]nder certain circumstances the active enforcement of an illegal contract may constitute an overt act which will restart the statute of limitations"). Thus, LaSalvia and Eichman do not govern this case.

Page 21 - OPINION AND ORDER

### ii.  Hostile Work Environment

The Ninth Circuit has held that ongoing harassment, when based on race, gender, religion, national origin or engaging in a protected activity, can create a hostile work environment. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (discussing liability under Title VII)); see also Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000) (extending hostile work environment claims to those based on engaging in protected activities).

To state a hostile work environment harassment claim, a plaintiff must establish a "pattern of ongoing and persistent harassment." Draper, 147 F.3d at 1108. To satisfy this requirement, the plaintiff must show that his workplace was "both objectively and subjectively offensive." Faragher v. City of Boca Raton, 542 U.S. 775, 787 (1998). Whether conduct is objectively offensive is determined by the "totality of circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Ray, 217 F.3d at 1245 (quoting Harris, 510 U.S. at 23). Thus, conduct, even if discriminatory, will not create a hostile work environment unless it interferes with an employee's job performance unreasonably or imposes such intolerable conditions as to be abusive. See Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1055-56 (9th Cir. 2007).

In addition, a plaintiff must prove that any harassment took place because he engaged in a protected activity. See Oncale, 523 U.S. at 80. The critical issue, therefore, "is whether members of [the protected class] are exposed to disadvantageous terms or conditions of employment" to which other employees are not exposed. Id. (quoting Harris, 510 U.S. at 25 (GINSBURG, J., concurring)).

Here, even viewing the facts in the light most favorable to the non-moving party, plaintiff fails to state a hostile work environment claim for two reasons. First, while plaintiff makes several allegations that actions were taken to undermine his credibility and ability to manage effectively, these instances are all discrete in nature. There is no evidence that plaintiff suffered repeated harassment on a daily, weekly, or even monthly basis. The allegedly retaliatory and discriminatory events are often separated by several weeks, and in most cases, months. There is also no evidence of physical harassment or humiliation. Instead, many of plaintiff's allegations are nothing more than isolated interpersonal conflicts, and, as such, are not objectively offensive. As such, plaintiff's allegations cannot be considered sufficiently severe.

Second, and most importantly, plaintiff has failed to establish that any harassment took place because he engaged in a protected activity. Because plaintiff did not brief this issue, it is difficult to discern what allegations serve as the basis of this claim. However, within the terse paragraph that plaintiff

Page 23 - OPINION AND ORDER

devotes to the issue, plaintiff asserts that he was "forced to
take medical leave and file for workers' compensation in 2007 due
to extreme anxiety caused by his work environment." Plf.'s Resp.
to Mots. Summ. J. 20. Thus, plaintiff admits that the alleged
harassment began prior to his participation in any protected
activities. Accordingly, by plaintiff's own admission, he is
unable to show that he was "exposed to disadvantageous terms or
conditions of employment" because he engaged in protected
activities. See Oncale, 523 U.S. at 80. Therefore, based on the
totality of the circumstances, I find that plaintiff's
allegations fail to establish the existence of a hostile work
environment.

As such, the continuing harms doctrine is not pertinent.
Accordingly, to the extent that plaintiff's claims are based on
events that occurred outside of the statute of limitations and
OTCA period, those acts are time-barred for liability purposes.
See Morgan, 536 U.S. at 113. Regardless, evidence of those acts
may be considered as background information in support of
plaintiff's timely claims. See Reyna, 2005 WL 708344 at *3.

B. Notice under the Oregon Torts Claims Act

It is undisputed that the OTCA governs plaintiff's Oregon
statutory claims for violations of the OFLA, injured worker
discrimination, disability discrimination, and whistleblower
retaliation. See Or. Rev. Stat. § 30.275; Or. Rev. Stat. §
659A.875. It is also undisputed that plaintiff filed his
original complaint in this Court on January 6, 2009.

Page 24 - OPINION AND ORDER

The OTCA provides that notice of a claim must be given to a public body "within 180 days after the alleged loss or injury." Or. Rev. Stat. § 30.275(2)(b). In addition to the OTCA notice requirement, plaintiff's claims are subject to a one year statute of limitations. See Or. Rev. Stat. § 659A.875(1). As discussed in Section II(A), the continuing harm doctrine does not apply to plaintiff's Oregon statutory claims. Accordingly, the OTCA notice provision acts as the ultimate time-bar with respect to plaintiff's claims. See Irvin v. City of Cottage Grove, 2009 WL 2392138, *5 (D.Or. Aug. 3, 2009).

Under the OTCA, notice can be either formal or actual. See Or. Rev. Stat. § 30.275(3). Formal notice is a written communication from a claimant or representative of a claimant containing a "statement that a claim for damages is or will be asserted against the public body . . . [and a] description of the time, place and circumstances giving rise to the claim." Or. Rev. Stat. § 30.275(4).

Actual notice "is a communication that (1) allows the recipient to acquire actual knowledge of the time, place and circumstances that give rise to the specific claim or claims that the plaintiff ultimately asserts; and (2) would lead a reasonable person to conclude that the plaintiff has a general intent to assert a claim." Flug v. Univ. of Or., 335 Or. 540, 554, 73 P.3d 917 (2003); see also Or. Rev. Stat. § 30.275(6). This communication must "be provided to the person responsible for investigating tort claims brought against the agency." Plumeau

Page 25 - OPINION AND ORDER

v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 437 (9th Cir. 1997) (citing McCabe v. State, 314 Or. 605, 611-12, 841 P.2d 635 (1992)); see also Or. Rev. Stat. §§ 30.275(5), (6).

### i. Oregon Family Leave Act

Plaintiff's OFLA claim is alleged solely against the City. It is undisputed that plaintiff provided formal notice to the City on July 5, 2007. As such, the City contends that plaintiff is barred from basing his OFLA claim on any allegedly discriminatory or retaliatory conduct that occurred prior to January 6, 2007.

Plaintiff concedes the date of formal notice, but asserts that, in addition, the City received actual notice of the OFLA claim on February 21, 2007, when plaintiff "reported racial, whistleblowing, and medical leave discrimination and harassment claims to Human Resources Site Team Director Suzanne Kahn and Transportation Director Sue Keil." Plf.'s Resp. to Mots. Summ. J. 15. As such, plaintiff asserts that his OFLA claim can be based on conduct transpiring on or after August 25, 2006.

This Court need not address whether plaintiff's internal complaint allowed the City to acquire actual knowledge of the "time, place and circumstances" giving rise to plaintiff's claims, or whether Keil or Kahn are the people responsible for administering claims under the statute, because I find that the other requirement of the statute is dispositive. While plaintiff alleged that the City's conduct was contrary to law, he failed to communicate the intent to litigate. Thus, I find that these

Page 26 - OPINION AND ORDER

statements would not lead a reasonable person to conclude that
plaintiff had a general intent to assert a claim.  See Lane v.
Hood River Cnty., 2009 WL 1662990, *7-8 (D.Or. June 11, 2009)
(letter stating that plaintiff was unwilling to give up his right
to pursue defendant by signing a settlement proposal and that
defendant violated labor laws "merely reflect[ed the plaintiff's]
belief that the [defendant's] behavior was contrary to law, not
that he intended to sue"). Accordingly, plaintiff's February 21,
2007 complaint did not provide "actual notice" under the OTCA.
Id.; see also Flug, 335 Or. at 554 (letter describing the
circumstances of the claim and that defendant's behavior was
illegal and unreasonable, but which did not state that a claim
would be asserted in litigation, failed to provide "actual"
notice under the OTCA).

     As such, plaintiff is barred from basing his OFLA claim on
any allegedly discriminatory or retaliatory conduct that occurred
prior to January 6, 2007.

          ii.  Injured Worker Discrimination

     Plaintiff's injured worker discrimination claim is asserted
against the City. It is undisputed that plaintiff provided
formal notice to the City on December 6, 2007. As such, the City
contends that plaintiff is barred from basing his injured worker
claim on any allegedly discriminatory or retaliatory conduct that
occurred prior to June 9, 2007.

     Plaintiff concedes the date of formal notice, but asserts
that the City received actual notice of the injured worker claim

Page 27 - OPINION AND ORDER

on February 21, 2007. See Plf.'s Resp. to Defs.' Mot. Summ. J. 15. As discussed above, however, plaintiff's February 21, 2007 complaint was insufficient to provide actual notice under the statute.

In the alternative, plaintiff contends that his BOLI complaint filed on October 8, 2007, based on his status as an injured worker, constitutes actual notice. The City acknowledged receipt of this complaint on October 31, 2007. As such, plaintiff argues that his injured worker discrimination claim can be based on conduct transpiring on or after May 4, 2007.

However, the District of Oregon has already rejected this argument, holding that a BOLI complaint "does not provide actual notice of a plaintiff's intent to file a lawsuit because a plaintiff is not required to file a BOLI complaint prior to filing an employment discrimination suit under state law." Lucke v. Multnomah Cnty., 2008 WL 4372882, *22 (D.Or. Sept. 22, 2008) (citing OAR 839-003-0020(1) and Birchard v. City of Portland, CV 00-1017-RE, Opinion and Order, p. 27 (D.Or Dec. 7, 2001)), aff'd in part, 365 Fed.Appx. 793 (9th Cir. 2010). Therefore, plaintiff's injured worker discrimination claim can be based on events that took place on or after June 9, 2007.

### iii. Disability Discrimination and Retaliation

Plaintiff concedes that portions of its fourth claim, asserted against the City, should be dismissed pursuant to the City's motion for summary judgment. Specifically, plaintiff agrees that summary judgment is appropriate on his disability

Page 28 - OPINION AND ORDER

retaliation claim pursuant to Or. Rev. Stat. § 659A.109. As
such, the City is entitled to summary judgment plaintiff's
disability retaliation claim.

In regard to the OTCA notice requirement, it is undisputed
that plaintiff first gave notice of this claim when he filed his
civil Complaint on January 6, 2009. As such, plaintiff's
disability discrimination claim cannot be based on conduct that
occurred prior to July 10, 2008.

### iv. Whistleblower Retaliation

Plaintiff originally alleged his fifth claim against all
defendants. Plaintiff, however, now acknowledges that this claim
can only be sustained against the City. Accordingly, Khan's and
Johnson's motions for summary judgment are granted in regard to
plaintiff's whistleblower claim.

The City contends that plaintiff provided formal notice of
his whisteblower retaliation claim on December 6, 2007.
Accordingly, the City argues that plaintiff is barred from basing
his whistleblower claim on any events that took place before June
9, 2007.

Plaintiff disputes the date of formal notice, claiming
instead that the "July 5, 2007 [tort claims letter] constitutes
formal notice under the statute." Plf.'s Resp. to Mots. Summ. J.
14. In addition, plaintiff asserts that the City received actual
notice of this claim on February 21, 2007. Id. at 15.
Plaintiff's February 21, 2007 complaint, however, was inadequate
under the OTCA.

Page 29 - OPINION AND ORDER

Plaintiff's July 5, 2007 letter states claims for violations of the FMLA and OFLA, violations of 42 U.S.C. § 2000 et seq. and Or. Rev. Stat. § 659A.030, and "[f]ailure to address and remedy his complaint of discrimination and retaliation in violation of City of Portland Administrative Rules." Furnanz Decl., Ex. 6. Thus, plaintiff's letter does not expressly mention a claim for whistleblowing retaliation under Or. Rev. Stat. § 659A.203 and, as such, fails to provide proper notice under the OTCA. Therefore, the City did not receive notice of the claim until December 6, 2007. Accordingly, plaintiff's whistleblower claim can be based on circumstances that took place on or after June 9, 2007.

C.  Statutes of Limitations for Plaintiff's Federal Claims

It is undisputed that defendants' first notice of plaintiff's federal claims was on January 6, 2009, when plaintiff filed his first Complaint. Further, as discussed in Section II(A), above, the continuing harm doctrine does not apply to plaintiff's federal claims.

i.  Family Medical Leave Act

Plaintiff's FMLA claim is asserted solely against the City. It is undisputed that the statute of limitations applicable to a claims under the FMLA is three years where, as here, willful discrimination is alleged. See 29 U.S.C. § 2617(c)(2). Thus, the statute of limitations for the FMLA claim includes conduct occurring on or after January 6, 2006. Accordingly, the City's motion for summary judgment is granted in part in regard to

Page 30 - OPINION AND ORDER

portions of plaintiff's claim based on conduct transpiring before January 6, 2006.

ii. First Amendment Claim Pursuant to 42 U.S.C. § 1983

Plaintiff's First Amendment retaliation claim is alleged against all defendants. It is undisputed that claims made under section 1983 are subject to Oregon's general two year statute of limitations. Sain v. City of Bend, 309 F.3d 1134, 1139 (9th Cir. 2004). As such, the statute of limitations includes conduct taking place on or after January 6, 2007. Therefore, defendants are entitled to summary judgment in part in regard to portions of plaintiff's claim based on conduct occurring before January 6, 2007.

III. Merits of Plaintiff's Remaining Claims

The Court now turns to the substantive merits of the portions of plaintiff's remaining claims that are not time-barred.

A. Violations of State and Federal Family Leave Acts

Plaintiff's first and second claims allege that the City perpetuated adverse employment actions against plaintiff for taking FMLA and OFLA leave. See 29 U.S.C. § 2601 et seq.; Or. Rev. Stat. § 659A.150 et seq. As discussed in section I(B)(i), to state a prima facie interference claim under the FMLA or OFLA, a plaintiff must prove that: 1) he took protected leave; 2) he was subjected to an adverse employment action; and 3) taking the leave was a "negative factor" in the adverse employment action. Bachelder, 259 F.3d at 1125.

Page 31 - OPINION AND ORDER

i. Family Medical Leave Act

It is undisputed that plaintiff took protected leave under the FMLA. See City's Memo. in Support of Mot. Summ. J. 23. It is further undisputed that plaintiff suffered an adverse employment action in November of 2006, when he was overlooked for a promotion, and that this action occurred within the statute of limitations. Id. Finally, it is undisputed that Irving's comment that plaintiff was not considered for the promotion because he had "missed too much work" is sufficient to establish that plaintiff's leave was a negative factor in the adverse decision. Id. Therefore, plaintiff established a prima facie interference claim. As such, the City's motion for summary judgment is denied in regard to plaintiff's FMLA claim.

ii. Oregon Family Leave Act

The parties do not contest that plaintiff took protected leave under the OFLA. Id. The City, however, contends that plaintiff's OFLA claim, based on the failure to be temporarily promoted in November of 2006, is time-barred by the OTCA. Conversely, plaintiff contends that "the City seems to be claiming that [p]laintiff suffered no other adverse employment actions. That is simply not supported by the evidence on record." Plf.'s Resp. to Mots. Summ. J. 18. As such, plaintiff argues that, based on the numerous other adverse employment actions, the OFLA claim should survive summary judgment.

Addressing the City's assertion regarding the OTCA, plaintiff's OFLA claim is limited to allegations of adverse

Page 32 - OPINION AND ORDER

employment actions occurring on or after January 6, 2007. Thus, the key event evidencing discrimination, specifically the failure to be considered for a temporary promotion in November 2006, cannot be considered as the basis of the OFLA claim.

It must therefore be determined whether plaintiff suffered any other cognizable adverse employment actions. Accordingly, this Court must examine what constitutes an adverse employment action and, if so, whether plaintiff has established that his protected leave was causally connected to those actions.

The Ninth Circuit defines adverse employment actions broadly. An adverse employment action is any action that is "reasonably likely to deter [an employee] from engaging in protected activity." Ray, 217 F.3d at 1243 (defining adverse employment action in the context of a Title VII claim); see also Bachelder, 259 F.3d at 1122 (defining adverse employment actions under the FMLA). A variety of actions have met this definition, including: a lateral transfer, or refusing a lateral transfer; undeserved negative performance evaluations or job references if motivated by retaliatory animus and not promptly corrected; being excluded from meetings, seminars and positions that would have made plaintiff more eligible for salary increases; being denied secretarial support; eliminating job responsibilities; and failure to be promoted or be considered for promotion. See Ray, 217 F.3d at 1241 (discussing Yartoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1997)); Hashimoto v. Dalton, 118 F.3d 671, 676 (9th Cir. 1997); Strother v. Southern Cal. Permanente Med. Grp.,

Page 33 - OPINION AND ORDER

79 F.3d 859, 869 (9th Cir. 1996); Madrid v. Cnty. of Apache, 289
Fed.Appx. 155, 159 (9th Cir. 2008) (citing Ruggles v. Cal.
Polytechnic State Univ., 797 F.2d 782, 786 (9th Cir. 1986)).
"Mere ostracism" or "offensive utterance by co-workers" does not
qualify as an adverse employment action. Strother, 79 F.3d at
860; Ray, 217 F.3d at 1243.

It is undisputed that plaintiff took protected leave in
February of 2007 and October of 2009. Plaintiff alleges that he
suffered a plethora of adverse employment actions as a result of
taking protected leave, including: denial of the opportunity to
compete for the permanent promotion in April of 2007; an
undeservedly negative performance review in October of 2007;
disparaging and derogatory comments; eliminating plaintiff's job
responsibilities in 2009; receiving discipline for events that
occurred while plaintiff was out on leave; and removal of
plaintiff's flexible start-time.

Many of these instances, however, are insufficient alone to
support an OFLA claim, since they do not qualify as adverse
employment actions or do not fall within the limitations period.
Regardless, changing job responsibilities does qualify as an
adverse employment action. See Strother, 79 F.3d at 869; Ray,
217 F.3d at 1243. Plaintiff, however, does not introduce any
evidence that his leave had any impact, much less that it was a
"negative factor," in the City's decision in 2009 to hire another
Senior Supervisor, aside from the proximity in time between the
two events.

Kahn and Johnson argue that the decision to hire another Senior Supervisor "was part of [Johnson's] reorganization of the division in July of 2008." Johnson's Reply to Mot. Summ. J. 6. Thus, this adverse decision was made over a year after plaintiff's February 2007 leave and three months before his October 2009 leave. I find that, because of the temporal distance between these events, timing alone is insufficient establish that the leave was a "negative factor" in regard to this adverse action. While the City neglects to address the timing of this decision or to incorporate Kahn's and Johnson's arguments by reference, the Court finds these facts instructive. Therefore, plaintiff has failed to establish a prima facie case in regard to the decision to reduce plaintiff's job duties.

The denial of the permanent promotion also occurred within the requisite time-frame and constitutes an adverse employment action. Ruggles, 797 F.2d at 786. Both parties, however, wholly fail to address the circumstances surrounding the promotion, including when the decision was made to appoint a new Division Manager, who was responsible for the decision, what factors were considered, and whether plaintiff was qualified or considered for the position. As such, this court is unable to even determine whether there is a genuine issue of material fact regarding causation and, thus, whether plaintiff can state a prima facie case. Regardless, the Court finds that, because the permanent promotion, which did occur within the requisite time frame, was a continuation of the temporary appointment, which plaintiff was

Page 35 - OPINION AND ORDER

not considered for because of his leave, plaintiff has
sufficiently established a prima facie. Accordingly, it would be
inappropriate to dismiss plaintiff's OFLA claim at this stage in
the proceedings. See Celotex, 477 U.S. at 323. Therefore,
defendant's motion for summary judgment is denied in regard to
plaintiff's OFLA claim.

B.  Oregon Injured Worker Discrimination

Plaintiff's third claim alleges that the City unlawfully
discriminated against plaintiff for invoking his rights as an
injured worker. Section 659A.040 prohibits discrimination
against an employee for invoking the workers' compensation
procedures outlined in Chapter 656 of the Oregon Revised
Statutes. See Or. Rev. Stat. § 659A.040. To establish a prima
facie case of injured worker discrimination, a plaintiff must
show that 1) he invoked the workers' compensation system; 2) he
was discriminated against in the tenure, terms or conditions of
his employment; and 3) the discrimination was caused by the
employee's invocation of workers' compensation. Hardie v. Legacy
Health Sys., 167 Or. App. 425, 433, 6 P.3d 531 (2000), rev.
denied, 332 Or. 656, 36 P.3d 973 (2001), partially superseded by
statute on other grounds, Or. Admin. R. 839-006-0205(6)(b);
Kotelnikov v. Portland Habilitation Ctr., 545 F.Supp.2d 1137,
1139 (D.Or. 2008) (citing Kirkwood v. Western Hwy. Oil Co., 204
Or. App. 287, 293, 129 P.3d 726 (2006) and Williams, 196 Or. App.
at 90).

To show a causal link between plaintiff's use of workers'

Page 36 - OPINION AND ORDER

compensation and any adverse employment action, plaintiff must establish that in the absence of a discriminatory motive, he would have been treated differently. Holte v. Steiner Corp., 2010 WL 1779965, *10 (D.Or. April 27, 2010) (citing Hardie, 167 Or. App. at 425). "Mere temporal proximity between the filing a workers' compensation claim and termination is insufficient without more to satisfy the causation element." Kelly v. Ironwood Commc'ns Inc., 2009 WL 3497811, *4 (D.Or. Oct. 29, 2009) (citing Ledesma v. Freightliner Corp., 97 Or. App. 379, 383, 776 P.2d 43 (1989)). As discussed above, the McDonnell Douglas burden-shifting framework applies if plaintiff establishes a prima facie case. Snead, 237 F.3d at 1092-93.

Here, it is undisputed that plaintiff invoked the workers' compensation system. In regard to the second element, plaintiff asserts that he was discriminated against in the tenure, terms or conditions of his employment by: reporting to "Kahn and Keil that he was filing a workers' compensation claim and was concerned that he was being discriminated and retaliated against for taking leave for his health condition"; not receiving the permanent promotion to Division Manager; being subjected to "a campaign of harassment to discredit [p]laintiff's authority as a supervisor after he invoked the protections of the workers' compensation system," including having his computer searched and office items re-arranged while he was out on FMLA leave, receiving a negative performance review, having his then-supervisor Boyle correct an employee evaluation that plaintiff prepared, and learning that

Page 37 - OPINION AND ORDER

Johnson made a derogatory comment about plaintiff while at a
meeting. Plf.'s Resp. to Mots. Summ. J. 23-4.

Plaintiff's allegations of "a campaign of harassment to
discredit [his] authority as a supervisor after he invoked the
protections of the workers' compensation system" are insufficient
and unsupported by the record. Further, plaintiff's allegedly
"negative" performance review is, in fact, not negative. Rather,
plaintiff was rated overall as "effective," and the comments made
in the review are largely complementary. See Furnanz Decl., Ex.
8. The only negative statement was made in regard plaintiff's
professionalism. Id. This comment, however, is unrelated to
plaintiff's worker compensation claim and, thus, there is no
evidence that this comment was motivated by plaintiff's filing.
Id. The remainder of plaintiff's assertions regarding this
"campaign" are minor instances of interpersonal workplace
conflict and, thus, are not actionable. See Ray, 217 F.3d at
1241; Strother, 79 F.3d at 869; see also Brooks v. City of San
Mateo, 229 F.3d 917, 928-29 (9th Cir. 2000) (badmouthing an
employee outside of the job reference context is not an adverse
employment action).

The only allegation that does qualify as an adverse action
is the failure to be considered for a promotion. See Ruggles,
797 F.2d at 786. However, as discussed in section II(B),
plaintiff is prohibited from basing his injured worker
discrimination claim on events that took place prior to June 9,
2007. As such, any evidence regarding the permanent promotion,

Page 38 - OPINION AND ORDER

which occurred in April 2007, is time-barred by the OTCA. Thus, plaintiff is unable to state a prima facie case. As such, the McDonnell Douglas analysis is not triggered. Davis, 520 F.3d at 1089. Therefore, defendant is entitled, as a matter of law, to summary judgment on plaintiff's injured worker discrimination claim.

D. Oregon Disability Discrimination

Plaintiff's fourth claim asserts that the City discriminated against him because of his disability, thereby violating Or. Rev. Stat. § 659A.112.

Section 659A.112 makes it unlawful for an employer to "discriminate in compensation or in terms, conditions or privileges of employment on the basis of disability." Or. Rev. Stat. § 659A.112(1). The Oregon disability statues "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act ("ADA")." Or. Rev. Stat. § 659A.139. Thus, in order to establish a prima facie case, a plaintiff must show that he: 1) is a disabled or perceived as such; 2) is a qualified individual, meaning he is capable of performing the essential functions of the job; and 3) suffered an adverse employment action because of his disability. Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999) (discussing a prima facie disability discrimination claim under the ADA).

Additionally, the statute specifies that an employer also discriminates by not making "reasonable accommodation to the

Page 39 - OPINION AND ORDER

known physical or mental limitations of a qualified individual
with a disability who is [an] employee." Or. Rev. Stat. §
659A.112(2). Once an employee requests an accommodation or an
employer recognizes the employee needs an accommodation but the
employee cannot request it because of a disability, the employer
must engage in an interactive process with the employee to
determine the appropriate reasonable accommodation. Barnett v.
U.S. Air, Inc., 228 F.3d 1105, 1112 (9th Cir. 2000) (en banc),
vacated on other grounds, 535 U.S. 391 (2002). Under McDonnell
Douglas, where plaintiff establishes a prima facie case, the
burden shifts to the City to offer a legitimate, non-
discriminatory reason for the adverse employment decision.
Snead, 237 F.3d at 1092-93.

Here, plaintiff alleges that he suffered discrimination when
the City failed to engage in an interactive process to provide
reasonable accommodations. See Plf.'s Resp. to Mots. Summ. J.
26. It is undisputed that plaintiff did not make a formal
request for accommodations until July 2, 2010. It is also
undisputed that after plaintiff made a formal request, the
parties engaged in an interactive process. Further, the City
admits that it did not provide accommodations to plaintiff prior
to his making a formal request.

The City asserts, however, that "there is no evidence that
the City knew that [plaintiff] had a disability or mental
limitations that required any accommodation prior to his December
15, 2009 deposition." City's Memo. in Support of Mot. Summ. J.

Page 40 - OPINION AND ORDER

31. As such, the City contends that it had no obligation to engage in the interactive process until the formal accommodation was made; further, the City argues that it fulfilled this obligation. Therefore, the City asserts that plaintiff is unable to establish his prima facie case.

Conversely, plaintiff argues that the City knew of his disability in February 2007, when plaintiff took medical leave and filed for workers' compensation benefits for his disability. In the alternative, plaintiff argues that the City learned of plaintiff's disability in January 2008, when he testified at his workers' compensation hearing that he suffered from an anxiety disorder and described how the anxiety affected his thinking, concentration, and memory.

While the record reveals that defendants knew that plaintiff suffered from anxiety, I agree with the City that there was no evidence that plaintiff indicated that he needed workplace accommodations because of his anxiety. Plaintiff testified that he occasionally told Johnson, "I'm sorry. I forgot. I need some reminders at some points." Furnanz Decl., Ex. 3, Shepard Depo. 324:16-17. However, because every person, even those not afflicted with a disability, forget things and need reminders, I find that these types of generalized statements are insufficient to put a reasonable person on notice of the existence of a disability and the need for accommodation. Further, there is no evidence that plaintiff was unable to request an accommodation because of his disability. Indeed, plaintiff proved that he was

Page 41 - OPINION AND ORDER

capable of making such a request when he filed a formal
"Accommodation Request Form" in July 2010. Accordingly, the
interactive process was not implicated until plaintiff's formal
request.

Regardless, even if this court construed plaintiff's
statements in February 2007 and January 2008 as formal requests
for accommodation, thereby triggering the interactive process,
plaintiff would still be unable to sustain a claim under section
659A.112 based on these events. As discussed in section II(B),
above, plaintiff's disability discrimination claim is limited to
those events occurring on or after July 10, 2008.

However, whether the City adequately engaged in the
interactive process after plaintiff formally requested
accommodations is a more difficult question. This event is not
time-barred by the OTCA. Once instigated, the interactive
process "requires communication and good-faith exploration of
possible accommodations between employers and individual
employees. The shared goal is to identify an accommodation that
allows the employee to perform the job effectively. Both sides
must communicate directly, exchange essential information and
neither side can delay or obstruct the process." Barnett, 228
F.3d at 1114-15.

Here, it is undisputed that a representative of the City,
Jansen, met with plaintiff once regarding his disability and his
need for accommodations after he made a formal request.
Plaintiff characterizes this process as insufficient and asserts

Page 42 - OPINION AND ORDER

that the City failed to participate "in good faith." Plaintiff also contends that the accommodations that Jansen suggested, namely creating a calendar with plaintiff's daily tasks printed out on it, was just another attempt by the City to set plaintiff up for professional failure: "I was very concerned that Ms. Jansen was trying to use the interactive process to bootstrap a requirement that I meet additional layers or responsibility that I never had before. I told Ms. Jansen that next logical step was that I would be disciplined if I could not exactly conform." Plf.'s Decl., ¶ 137.

The City asserts that, based on these events, plaintiff cannot show either " a 'failure' to participate in the interactive process, or that he identified any reasonable accommodation that he has been denied due to such failure." City's Reply to Mot. Summ. J. 7. Rather, the City construes plaintiff as merely being unhappy with the accommodations that Jansen identified, yet argues that mere displeasure with the proffered solution is not actionable under Oregon law.

While I am inclined to agree with the City, viewing the evidence in a light most favorable to plaintiff, I find that there is a limited question of fact regarding whether the interactive process was sufficient after plaintiff formally requested accommodations in July 2, 2010. Therefore, plaintiff has established his prima facie case.

Under McDonnell Douglas, the burden now shifts to the City. Davis, 520 F.3d at 1089. The City "notes that it did have

Page 43 - OPINION AND ORDER

legitimate non-discriminatory reasons for its actions, which are articulated in Exhibit 1 to the Declaration of Kari A. Furnanz, which is incorporated herein in its entirety." City's Memo. in Support of Mot. Summ. J. 32. Exhibit 1 to Ms. Furnanz's declaration, however, does not address plaintiff's formal request for accommodations and the subsequent interactive process. See Furnanz Decl., Ex. 1. Thus, the City has, in fact, failed to articulate a legitimate, non-discriminatory reason for its actions. Therefore, the burden does not shift back to plaintiff to show pretext. Davis, 520 F.3d at 1089. The City's motion for summary judgment is denied in regard to plaintiff's reasonable accommodation claim.

E. Oregon Whistleblower Retaliation

In his fifth claim, plaintiff alleges that the City retaliation against him, in violation of Or. Rev. Stat. § 659A.203, because he made "good faith internal complaints of defendant engaging in unlawful employment activities" and because "he filed administrative complaints against defendant City and participated in a Workers' Compensation proceeding." SAC ¶¶ 71-74.

Section 659A.203 prevents a public employer from taking or threatening to take "disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of" a violation of any federal or state law, rule or regulation or "[m]ismanagement, gross waste of funds or abuse of authority." Huff v. City of Portland, 342 Fed.Appx.

Page 44 - OPINION AND ORDER

282, 283 (9th Cir. 2009) (citing Or. Rev. Stat. § 659A.203(1)).

To establish a prima facie whistleblowing claim, a plaintiff must show: (1) he engaged in protected activity; and (2) he suffered an adverse employment decision (3) because he engaged in the protected activity. Clarke v. Multnomah Cnty., 2007 WL 915175, *14 (D.Or. Mar. 23, 2007), aff'd, 303 Fed. Appx. 512 (9th Cir. 2008). Where plaintiff establishes a prima facie case, the McDonnell Douglas burden-shifting framework applies. Snead, 237 F.3d at 1092-93.

Turning to the first element, plaintiff alleges that he complained to the City regarding violations of state and federal law, as well as gross mismanagement of funds, on a number of occasions between 2004 and 2007, with the last complaint occurring on February 21, 2007. See Plf.'s Resp. to Mots. Summ. J. 29. It should be noted that, as discussed in Section II(B), plaintiff's whistleblower retaliation claim can only be based on events occurring on or after June 9, 2007. As such, all of plaintiff's allegedly protected disclosures are time-barred by the OTCA notice provision. Thus, because plaintiff cannot establish that he engaged in a protected activity within the requisite time-frame, he is unable to establish a prima facie case. Therefore, the City is entitled to summary judgment as a matter of law in regard to plaintiff's whistleblower retaliation claim.

Page 45 - OPINION AND ORDER

F.  Violation of Rights Under 42 U.S.C. § 1983

Plaintiff's sixth and final claim alleges a violation of his First Amendment rights under 42 U.S.C. § 1983. Plaintiff brings this claim against all defendants.

To establish a claim under section 1983, plaintiff must prove both that he was deprived of an existing federal right and that the deprivation occurred under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). In order to determine whether a government employee's free speech rights have been violated, the court must follow a five step sequential inquiry. Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009), cert. denied, 130 S.Ct. 1047 (2010). The plaintiff must first prove that: 1) he spoke on a matter of public concern; 2) he spoke as a private citizen, not as a public employee; and 3) his protected speech was a substantial or motivating factor for an adverse employment action against him by his public employer. Id. at 1070-71.

If the plaintiff proves each of these three elements, the burden shifts to the public employer to show: 4) that the employer had an adequate justification for treating the employee differently from other members of the general public, or, in the alternative; 5) that the employer would have reached the same adverse employment decision even in the absence of the employee's protected conduct. Id. at 1071-72.

i. Section 1983 Claim Against Kahn and Johnson

Kahn and Johnson contend that plaintiff is unable to prove any of the three required elements in order to state a prima

Page 46 - OPINION AND ORDER

facie case. Additionally, they assert that plaintiff failed to
establish that Kahn or Johnson personally participated the
deprivation of plaintiff's free speech rights. In the
alternative, defendants argue that they are entitled to qualified
immunity.

> a. Whether the Speech Involved a Matter of Public
> Concern

At the first step of the section 1983 First Amendment
violation analysis, plaintiff must prove that his speech involved
a matter of public concern. Eng, 552 F.3d at 1071. Speech
involves a matter of public concern when it relates to "any
matter of political, social or other concern to the community."
Connick v. Myers, 461 U.S. 138, 146 (1983). In addition,
"proceedings before a judicial or administrative body constitute
a matter of public concern if they bring to light potential or
actual discrimination, corruption, or other wrongful conduct by
government agencies or officials." Alpha Energy Savers, Inc. v.
Hansen, 381 F.3d 917, 925 (9th Cir. 2004) (citing Lytle v.
Wondrash, 182 F.3d 1083, 1087-88 (9th Cir. 1999) and Rendish v.
City of Tacoma, 123 F.3d 1216, 1223-24 (9th Cir. 1997)).
Conversely, "'speech that deals with individual personnel
disputes and grievances and that would be of no relevance to the
public's evaluation of the performance of government agencies, is
generally not of public concern.'" Id. at 924 (quoting Coszalter
v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003)).

Here, plaintiff bases his section 1983 claim on his numerous

BOLI complaints, which involved allegedly unlawful discrimination and retaliation by public officials. Therefore, plaintiff has sufficiently established that he was speaking on a matter of public concern. Id.; see also Thomas v. City of Beaverton, 379 F.3d 802, 809 (9th Cir. 2004) (reports of "[u]nlawful conduct by a government employee or illegal activity within a government agency [even if it also involves a personnel dispute] is a matter of public concern").

> b. Whether the Speech was Made as a Private
> Citizen or Public Employee

At the second step of the section 1983 First Amendment violation analysis, the plaintiff must prove that his speech was spoken in his capacity as a private citizen, and not as a public employee. Eng, 552 F.3d at 1071. Where an employee has an official duty to speak, or his speech is the product of performing the tasks the employee is paid to perform, the speech is spoken in his capacity as a public employee. Id. The scope and content of an employee's job responsibilities is a question of fact; however, "the 'ultimate constitutional significance of the facts found' is a question of law." Id. (quoting Posey v. Lake Pend Oreille School Dist. No. 84, 546 F.3d 1121, 1129-30 (9th Cir. 2008)).

The parties agree that in his role as Senior Supervisor, plaintiff was responsible taking action with regard to perceived unlawful employment practices involving his subordinate employees and to ensure that other employees know and comply with the

Page 48 - OPINION AND ORDER

applicable employment rules.   See Furnanz Decl., Ex. 3, Shepard
Depo. 112:3-112:21; 321:1-2.   Thus, plaintiff's reports regarding
practices involving other employees cannot, as a matter of law,
be viewed as the speech of a private citizen.

Plaintiff's complaints regarding the allegedly unlawful
employment practices he himself was a victim of are a different
matter.   Kahn and Johnson assert that these "reports owed their
existence to plaintiff's status as an employee because a private
citizen cannot make such complaints."   City's Memo. in Support of
Mot. Summ. J. 40.   Conversely, plaintiff argues that
because he was not paid to file complaints with his supervisors
or with BOLI, he was not speaking as a public employee.

I agree with plaintiff; when an individual attempts to
vindicate alleged violations of his own civil rights, on his own
time, outside of the workplace, he is speaking as a private
citizen.   Therefore, plaintiff's speech is protected under the
First Amendment.

> c.   Whether the Speech was a Motivating Factor in
> the Adverse Employment Decision

At the third step of the section 1983 First Amendment
violation analysis, plaintiff must prove that his protected
speech was a "substantial or motivating" factor in the adverse
action taken against him by the defendant.   Eng, 552 F.3d at
1071.   Whether plaintiff's constitutionally protected speech was
a motivating factor in defendants' adverse employment decision is
purely a question of fact.   Id.

Page 49 - OPINION AND ORDER

Here, plaintiff again proffers a long laundry list of the adverse employment actions that he allegedly suffered.  While the majority of these decisions are insufficient, plaintiff does allege that Johnson and Kahn removed some of his job responsibilities, which qualifies as an adverse employment action.  See Strother, 79 F.3d at 869.

Whether plaintiff's speech was a "substantial and motivating" factor in the decision is a closer question.  There are three ways in which a plaintiff can show that the protected speech was a substantial or motivating factor behind a defendant's adverse employment actions.  Coszalter, 320 F.3d at 977 (citing Keyser v. Sacramento City Unified School Dist., 265 F.3d 741 (9th Cir. 2001)).  First, motivation can be inferred from the "'proximity in time between the protected action and the allegedly retaliatory employment decision,'" from which a "'jury logically could infer [that the plaintiff] was terminated in retaliation for his speech.'" Id. (quoting Keyser, 265 F.3d at 751) (internal quotations omitted).  Second, a plaintiff can introduce evidence that "'his employer expressed opposition to his speech, either to him or to others.'" Id. (quoting Keyser, 265 F.3d at 751).  Third, the plaintiff can introduce evidence that "'his employer's proffered explanations for the adverse employment action were false and pre-textual.'" Id. (quoting Keyser, 265 F.3d at 752).

It is undisputed that plaintiff's BOLI complaints were filed in October 2007, July 2007, and August 2008.  Further, in January

Page 50 - OPINION AND ORDER

6, 2009, plaintiff filed this lawsuit. It is further undisputed that, sometime in 2009, defendant hired an additional Senior Supervisor to oversee approximately half of plaintiff's employees. As discussed above, Kahn and Johnson assert that this decision was made as part of a division reorganization in July 2008. Thus, the decision to remove some of plaintiff's job responsibilities was made a year after the last BOLI complaint he made in 2007, and prior to the August 2008 BOLI complaint or the filing of this lawsuit. Because these events are too remote in time, there is no temporal link between plaintiff's protected speech and the decision to hire an additional Senior Supervisor. See Manatt v. Bank of America, NA, 339 F.3d 792, 802 (9th Cir. 2003) (nine months between the plaintiff's complaint and defendant's alleged adverse decision was too long to create the inference of causation, citing Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam)).

Moreover, plaintiff has offered no evidence, other than the timing of the events and mere conclusory statements, that the protected speech was in any way a factor in this decision, let alone a "substantial or motivating" one. Further, the record does not reflect that Kahn or Johnson expressed opposition to plaintiff's speech, or that the reasons for the reorganization, namely that plaintiff's work load was extremely high and unsustainable, were false and pre-textual. Coszalter, 320 F.3d at 977. Therefore, plaintiff's claim against Kahn and Johnson fails at the third step of the five-step sequential analysis.

Page 51 - OPINION AND ORDER

### d. Whether Defendants had Adequate Justification or Would Have Made the Same Decision had Plaintiff not Engaged in Protected Speech

Because plaintiff failed to meet his prima facie case, the Court need not reach the question of whether Kahn and Johnson had adequate justification for treating the employee differently from other members of the general public, or, in the alternative, that defendants would have reached the same adverse employment decision even in the absence of the employee's protected conduct. However, it should be noted that plaintiff failed to show that defendants' actions were not for legitimate employment reasons.

Further, where a plaintiff has borne his burden of proof on the first three elements, and the defendant cannot show that the state's legitimate administrative interest outweigh the employee's First Amendment rights, the defendant may still avoid liability by showing that the employee's protected speech was not a "but-for" cause of the adverse employment action. Eng, 552 F.3d at 1072 (citing Mt. Health City School Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977)).

Here, because plaintiff cannot establish that his speech was a "substantial or motivating" factor in the adverse employment decision, he would be similarly unable to establish that the protected speech was not a "but-for" cause of the adverse employment action. Thus, plaintiff failed to show that defendants would have made the same adverse employment decisions even if plaintiff did not engaged in protected speech.

Page 52 - OPINION AND ORDER

Therefore, plaintiff's section 1983 claim against Johnson and Kahn would also have failed at either the fourth or fifth step of the five-step sequential analysis. As such, the Court declines to address whether Kahn's or Johnson's actions were protected by qualified immunity.

### ii. Section 1983 Claim Against the City

The City also argues that plaintiff is unable to prove any of the three required elements in order to state a prima facie case. In addition, the City asserts that plaintiff failed to establish that the City has a custom or policy of depriving employees of their First Amendment rights.

Where a First Amendment claim is brought under section 1983 against a municipality, a plaintiff must prove, in addition to the above requirements, that the municipality has a policy or custom of violating such rights. Hutton v. Jackson Cnty., 2010 WL 4906205, *5 (D.Or. Nov. 23, 2010) (citing Crowe v. Cnty. of San Diego, 608 F.3d 406, 445 (9th Cir. 2010) and Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)). Thus, a municipality may not be held liable under section 1983 unless a plaintiff can show: (1) a municipal employee violated his constitutional rights; (2) the municipality has a custom or policy; (3) that policy amounts to deliberate indifference to constitutional rights; and (4) this custom or policy was the moving force behind the employee's violation of plaintiff's constitutional rights. Id. (citing Burke v. Cnty. of Alameda, 586 F.3d 725, 734 (9th Cir. 2009)).

Page 53 - OPINION AND ORDER

Plaintiff is likely unable to impose liability against the City under section 1983 for the same reasons that he is unable to do so against Kahn and Johnson. The Court, however, finds it unnecessary to address whether plaintiff can establish an initial claim under 42 U.S.C. § 1983, as I find the issue of whether the City had a policy of violating employees' First Amendment rights dispositive. The City asserts that it did not have a policy, practice or custom of retaliating against employees who exercised their free speech rights. Plaintiff offers no argument or evidence in response. In fact, plaintiff has completely failed to address this element in his briefs. Thus, based on this record, even if the City had violated plaintiff's constitutional rights, plaintiff's section 1983 claim against the City fails as a matter of law. Therefore, the City's motion for summary judgment is granted in regard to this claim.

## CONCLUSION

For the reasons stated above, the City's motion to for summary judgment (doc. 71) is GRANTED in part and DENIED in part as follows: the City's motion is GRANTED as to plaintiff's injured worker discrimination claim, whistleblower retaliation claim, and claim for violation of civil rights pursuant to 42 U.S.C. § 1983; defendants' motion is DENIED as to plaintiff's FMLA claim, OFLA claim, and disability discrimination claim.

Kahn's motion for summary judgment (doc. 73) and Johnson's motion for summary judgment (doc. 72) are GRANTED. In light of this decision, the Court strongly encourages the parties to

Page 54 - OPINION AND ORDER

initiate settlement negotiations.

IT IS SO ORDERED.

Dated this 28 of October 2011.


_____
Ann Aiken
United States District Judge